IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OMAR VELASQUEZ,<br><br>Defendant. | 2:26-CR-066-Z-BR-(3) |

## ORDER

Before the Court is the Government's Motion for Revocation of Order Denying Government's Motion for Pretrial Detention ("Motion"). ECF No. 51. Defendant does not oppose the Motion. ECF No. 76 at 2. Having considered the magistrate's Order, the Government's Motion, all evidence submitted, and the applicable law, the Court **GRANTS** the Motion.

### BACKGROUND

On June 25, 2026, a federal grand jury returned an Indictment against Omar Velasquez, charging him with one count of Conspiracy to Traffic Firearms, in violation of 18 U.S.C. Section 933, and one count of Conspiracy to Straw Purchase Firearms, in violation of 18 U.S.C. Section 932. *See* ECF No. 3. Law enforcement arrested Defendant in the Southern District of California "as he crossed into the United States from Mexico." ECF No. 11 at 1. Defendant was brought before a United States magistrate judge in the Southern District of California for a hearing on pretrial detention, pursuant to 18 U.S.C. Section 3142. *See* ECF No. 11. After hearing arguments and receiving evidence from both the Government and counsel for the Defendant, the magistrate judge "ordered the release of [Defendant] over the government's objection." *Id.* at 2–3.

The Government moved for the magistrate to "stay imposition of the release order pending the government's determination of an appeal," which the magistrate granted "until close of business on Tuesday July 7, 2026." *Id.* at 3–4. The Government then filed a motion to extend the stay pending this Court's decision on the Government's motion to revoke the magistrate's release order. *See id.* at 4. The Court granted that motion and extended the stay, allowing the parties to submit the necessary briefs, transcripts, or exhibits for this Court's review. *See* ECF No. 12.

The Government then filed the instant Motion, seeking to revoke Defendant's pretrial release. ECF No. 51. Defendant failed to timely respond. *See* N.D. TEX. LOC. CRIM. R. 47.1(e), 59.1(b) (requiring response to a motion within fourteen days). The Court ordered Defendant to file a responsive brief. ECF No. 69. Defendant complied and filed a response indicating there was good cause for the prior delay and noting Defendant "has instructed counsel to NOT OPPOSE the Government's Motion for Revocation." ECF No. 76 at 2 (emphasis in original). For the reasons stated below, the Court now **GRANTS** the Motion.

## LEGAL STANDARD

"The district court, making an independent determination, can order pretrial detention even though the magistrate has refused to do so." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). A district court's authority to review a magistrate's release order is found at 18 U.S.C. Section 3145. That section provides, in relevant part:

> If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
>
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . .
>
> The motion shall be determined promptly.

18 U.S.C. § 3145(a). In reaching a decision, the Court employs a *de novo* standard of review,

relying on the evidence heard by the magistrate judge. *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992); *Fortna*, 769 F.2d at 249. The Court may even make "additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *Fortna*, 769 F.2d at 250. In short, the Court owes no deference to the magistrate's findings, save whatever persuasive value they hold, given that the magistrate presided over the hearing at which the parties offered their evidence.

For offenses without *presumptive* pretrial detention, *see* 18 U.S.C. §§ 3142(e)(2)–(3), a court may still order pretrial detention when (1) "no condition or combination of conditions will reasonably assure the appearance of the person as required," or (2) release "will endanger the safety of any other person or the community." *Id.* § 3142(e)(1); *see Fortna*, 769 F.2d at 251. In other words, if the defendant poses either a "flight risk" or a "safety risk" which release conditions cannot cure, then the Court may order pretrial detention. If the Court bases pretrial detention on a defendant's flight risk, a "preponderance of the evidence" may support that finding. *Fortna*, 769 F.2d at 250. But finding that a defendant poses a safety risk requires more. The Government must prove a defendant's dangerousness by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2).

Section 3142 lists several factors for courts to consider in assessing a defendant's flight or safety risks. *See* 18 U.S.C. § 3142(g). The list is robust. It includes (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," (2) "the weight of the evidence against the person," (3) the person's "history and characteristics," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(1)–(4). The statute further guides courts to consider, within a person's history and characteristics:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . .

*Id.* §§ 3142(g)(3)(A)–(B). These many considerations promote a wide view of Defendant's past behavior and relationships in the forum.

ANALYSIS

**I. Defendant Presents a Serious Flight Risk**

The Court finds no conditions of pretrial release will assure Defendant's appearance as required. Defendant's history and characteristics compel that finding, as does the nature of the instant allegations.

At the out-of-district detention hearing, the Government proffered evidence related to Defendant's history, characteristics, and the nature of the instant allegations. *See* ECF No. 51-1. Proffered evidence is permitted at a detention hearing, even from the Government. 3B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 766 (4th ed. 2013) ("Since the government has the burden of proof at [detention] hearings, it will usually begin by offering evidence, often in the form of a proffer by the attorney or case agent . . . ."). Numerous federal courts have come to that conclusion, with which this Court agrees. *See United States v. Vane*, 117 F.4th 244, 250 (4th Cir. 2024) (rejecting *expressio unius* argument that 18 U.S.C. Section 3142 implicitly forbids proffers by the Government); *United States v. Stone*, 608 F.3d 939, 948–49 (6th Cir. 2010); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987). And Defendant did not rebut, by proffer or otherwise, any of the Government's statements. *See generally* ECF No. 51-1. The Court therefore accepts the Government's proffers.

First, Defendant's "history and characteristics." 18 U.S.C. § 3142(g)(2). Evidence presented at the detention hearing showed Defendant has a history of travel befitting an international man of mystery. He has significant experience crossing international and interstate borders. *See id.* at 3. "[F]rom January 2025 to March 2026, the Defendant had at least 27 inbound crossings from Mexico to the United States," and Defendant's latest arrest occurred "at the port of entry . . . in San Diego." *Id.* at 3, 5. Defendant's numerous recent entries into the United States occurred in "at least nine different vehicles." ECF No. 51 at 2.

Once in the United States, Defendant remained incredibly mobile. For example, "between March 23 and March 26, 2026, alone," Defendant "traveled numerous places both in the United States and Mexico, including from Tijuana, Mexico to San Diego, California, then to Salt Lake City, then through other areas of Utah, Colorado, New Mexico, and Texas." *Id.* In May of 2026, Defendant embarked on a similar trip, this time including visits to Oklahoma and Arkansas, in addition to all the states previously listed, save only California. *Id.* at 2–3.

On its own, that history might merely evince an affinity for travel. But the "nature and circumstances of the offense charged" cast Defendant's activities in a troubling light. 18 U.S.C. § 3142(g)(1). The Government's unrebutted proffers indicate Defendant plays an integral role in the Sinaloa cartel's international weapons-smuggling operations. ECF No. 51-1 at 2. A federal grand jury charged Defendant with (1) Conspiracy to Traffic Firearms and (2) Conspiracy to Straw Purchase Firearms. ECF No. 3. Those charges stemmed from "a raid on a suspected Sinaloa cartel compound" that culminated in the seizure of narcotics, "several firearms[,] and one phone." ECF No. 51-1 at 2. The seized items included "one .50-caliber Barett rifle, one machine gun, three assault rifles, three handguns, 34 magazines, 2,500 live rounds of various calibers, four grenades, one drone with six batteries, tactical gear with ballistic plates, communication radios, 186 doses of suspected cocaine," and Mexican

currency equivalent to approximately "$57,231" in U.S. currency. ECF No. 51 at 3.

The seized phone revealed communications between Defendant and alleged co-conspirators about trafficking firearms across international borders. *Id.* at 3. There were also "communications about shootouts and setting off explosives." *Id.*; ECF No. 51 at 5. And certain messages illustrated Defendant's expertise in international smuggling. For example, Defendant described "pick[ing] up a little construction job" to evade detection after "people kept asking [him] how [he] managed to go to Mexico so often without having a job." ECF No. 51 at 4. Elsewhere, Defendant assessed the feasibility of smuggling "sights and magazines," claiming he could accomplish the feat in "three trips" with the contraband "really well hidden." *Id.* Defendant described smuggling tactics such as obtaining "different [license] plates" and using "someone with a visa who can say they're going on a shopping trip" as cover to avoid raising the suspicion of border officials. *Id.*

Given the nature and circumstances of the alleged offense, Defendant's frequent international and interstate travels corroborate an inference of smuggling expertise. The unrebutted evidence submitted by the Government depicts Defendant as an artist in evading law enforcement. Alongside his particular set of skills, he has international criminal contacts and few tethers to the United States—and *none* to the Amarillo Division. *See* ECF No. 51-1 at 5 (describing two family members in California).

The charges against Defendant are serious. *See* ECF No. 3. They carry the possibility of a lengthy sentence. If released, Defendant likely has the means and motive to successfully flee. The facts proffered by the Government —and the logical inferences thereof—overcome any countervailing factors: namely, Defendant's lack of a known criminal record and his minimal connections to this country. *See* ECF No. 51-1 at 6. On balance, the Court finds Defendant poses a severe flight risk. *See, e.g., United States v. Medina*, 775 F.2d 1398, 1402

(11th Cir. 1985) (affirming detention of an alleged drug smuggler with few ties to the forum based on flight risk); *United States v. Marroquin-Ramirez*, 778 F. Supp. 3d 498, 503 (N.D.N.Y. 2025) (revoking release of defendant charged with illegal reentry based on experience evading detection, ties to a foreign country, and lack of ties to the forum).

For the reasons stated above, and having considered all the factors listed in Section 3142, the Court finds, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. But even if Defendant did not pose such a flight risk, the Court would still order Defendant's pretrial detention because he is dangerous.

**II. Defendant's Release Poses a Safety Risk to Others**

Detention is also warranted because Defendant's pretrial release would "endanger the safety" of others and the community. 18 U.S.C. § 3142(e)(1). The nature and circumstances of the alleged offense compel that finding.

As previously noted, Defendant is charged with Conspiracy to Traffic Firearms and Conspiracy to Straw Purchase Firearms. ECF No. 3. The Government has proffered evidence indicating Defendant's conspiracy included at least one individual who engaged in a "firefight with the Mexican military" in which they "f[***]ed up the sand cats," using a "single shot barrett" with a "scope" and "80 shots" from "50 feet away." ECF No. 51 at 5. An initial raid yielded the phone connecting Defendant to the alleged conspiracy. *Id.* at 3. That raid also yielded narcotics and military-grade weapons, including a "machine gun," several "grenades," a "drone with six batteries," and "tactical gear with ballistic plates." *Id.*

Phone records indicate a co-conspirator messaged Defendant to "bring the rifles" for purposes of "[p]ure terror." Other messages indicated Defendant's organization participated in political corruption campaigns by influencing elections and infiltrating local law enforcement. *See id.* at 5. These messages indicate Defendant is deeply integrated into an

organization that perpetrates violence with the aid of smuggled weapons.

Accordingly, the Court finds, by clear and convincing evidence, that Defendant poses a safety risk to others and the community. His release, in combination with the flight risk previously assessed, would allow the continuation of deadly weapons-smuggling for violent cartel operations. That safety risk warrants pretrial detention.

## CONCLUSION

For the reasons stated, the Court **GRANTS** the Government's Motion and **ORDERS** that Defendant be detained pending trial.

The Court further **ORDERS** that Defendant "be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal." 18 U.S.C. § 3142(i)(2).

The Court further **ORDERS** that Defendant "be afforded reasonable opportunity for private consultation with counsel." *Id.* § 3142(i)(3).

Finally, the Court **ORDERS** that "on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which" Defendant "is confined" shall "deliver" Defendant "to a United States marshal for the purpose of an appearance in connection with a court proceeding." *Id.* § 3142(i)(4).

**SO ORDERED.**

August 12, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE